1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

### EASTERN DISTRICT OF CALIFORNIA

10

11   JAMES LEE SEWARD,                        )        1:06-CV-00888 LJO SMS HC
                                              )
12              Petitioner,                   )
                                              )        FINDINGS AND RECOMMENDATION
13        v.                                  )        REGARDING PETITION FOR WRIT OF
                                              )        HABEAS CORPUS
14                                            )
     ROSANNE CAMPBELL, Warden,                )
15                                            )
                Respondent.                   )
16   _____)

17
18        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

19   pursuant to 28 U.S.C. § 2254.

                                      **BACKGROUND**
20
21        Petitioner is currently in the custody of the California Department of Corrections pursuant to

22   a judgment of the Superior Court of California, County of Kern, following his conviction by jury

23   trial on November 19, 2003, of felony rape by force or fear (Cal. Penal Code § 261(a)(2)) and assault

     (Cal. Penal Code § 240). (LD[1] 6; CT[2] 210.) In a bifurcated court trial on November 29, 2003, the
24
25   court found true allegations that Petitioner had suffered a prior serious strike within the meaning of

26   California's Three Strikes law (Cal. Penal Code §§ 667, 1170.12) and that he had served two prior

27        [1]"LD" refers to the documents lodged by Respondent with her answer.

28        [2]"CT" refers to the Clerk's Transcript on Appeal.

1  prison terms. (CT 162-163.) On December 18, 2003, Petitioner was sentenced to serve a total

2  determinate term of twenty-three years in state prison. (CT 210.)

3      Petitioner filed a notice of appeal. On February 9, 2005, the California Court of Appeal, Fifth

4  Appellate District (hereinafter "Fifth DCA"), affirmed the judgment. (LD 6.) He then filed a petition

5  for review in the California Supreme Court. (LD 7.) On April 20, 2005, the petition was denied

6  "without prejudice to any relief to which [Petitioner] might be entitled after [the California Supreme

7  Court] determines in *People v. Black*, S126182, and *People v. Towne*, S125677, the effect of *Blakely*

8  *v. Washington* (2004) __ U.S. __ 124 S.Ct. 2531, on California law." (LD 8.)

9      On July 13, 2006, Petitioner filed the instant petition for writ of habeas corpus. On

10  November 27, 2006, Respondent filed an answer to the petition. Petitioner did not file a traverse.

11                              **FACTUAL BACKGROUND**[3]

12      ***Charges involving B.K.***

13      In Counts 1 through 3 of an information filed July 18, 2003, Petitioner was charged with

14  sexual offenses against B.K., age 15 at the time of trial. Counts 1 and 2 charged violations of Cal.

15  Penal Code section 288, subdivision (a) (lewd and lascivious act on a child under 14), occurring

16  between August 1, 1999, and January 31, 2001. Count 3 charged violation of section 220, assault

17  with intent to commit oral copulation, occurring in December 2002. As to all counts (including count

18  4, below), the information alleged one strike (§ 1170.12), one prior serious felony (§ 667, subd. (a)),

19  and two separate prior prison terms (§ 667.5, subd. (b)).

20      B.K. was the daughter of Petitioner's girlfriend. B.K. testified Petitioner continually groped

21  and touched her. On the occasion involved in count 3, B.K. testified, Petitioner tried to wrestle her

22  out of her pajamas, tearing her underpants. While doing so, he expressed his intention to orally

23  copulate her. Petitioner denied touching B.K. but acknowledged "hitting" her on the legs on one

24  occasion when she sassed him.

25      B.K. was impeached with testimony that she had made false accusation of sexual assault

26  against a foster parent.

27  _____

28      [3]The facts are derived from the factual summary set forth in the Fifth DCA opinion of February 9, 2005. (LD 6 at pp. 2-3.)

1    The jury acquitted Petitioner of all three counts. However, it found him guilty of

2    misdemeanor assault (§ 240) as a lesser included offense of count 3.

3         *Charges involving R.B.*

4         Count 4 of the information charged Petitioner with the forcible rape (§ 261, subd. (a)(2)) of

5    R.B., a 17-year-old relative who was staying at Petitioner's house after she ran away from a group

6    home. Petitioner denied having intercourse with R.B. The jury found Petitioner guilty on count 4.

7         *Sentence*

8         The court found that the upper term of eight years was appropriate on count 4. The court

9    found as aggravating factors Petitioner's long and increasingly serious history of crime primarily

10   related to violent behavior, his prior poor performance on numerous grants of parole and probation,

11   and his violation of a position of trust in the present case. In mitigation, Petitioner had on one

12   occasion performed well on parole. The court imposed the upper term, doubled to 16 years pursuant

13   to the three strikes law, and imposed seven years on the enhancements, for a total prison term of 23

14   years.

15                                **DISCUSSION**

16   **I.  Jurisdiction**

17        Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant

18   to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of

19   the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362,

20   375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S.

21   Constitution.  In addition, the conviction challenged arises out of the Kern County Superior Court,

22   which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly,

23   the Court has jurisdiction over the action.

24        On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

25   1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

26   <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); <u>Jeffries v. Wood</u>, 114

27   F.3d 1484, 1499 (9th Cir. 1997), *quoting* <u>Drinkard v. Johnson</u>, 97 F.3d 751, 769 (5th Cir.1996), *cert.*

28   *denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)

1  (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was

2  filed after the enactment of the AEDPA; thus, it is governed by its provisions.

3  **II.  Legal Standard of Review**

4       This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

5  pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

6  Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

7       The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death

8  Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63, 70

9  (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the

10  adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable

11  application of, clearly established Federal law, as determined by the Supreme Court of the United

12  States" or "resulted in a decision that was based on an unreasonable determination of the facts in

13  light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer,

14  538 U.S. at 70-71; see Williams, 529 U.S. at 413.

15       As a threshold matter, this Court must "first decide what constitutes 'clearly established

16  Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

17  *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court

18  must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time

19  of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly

20  established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by

21  the Supreme Court at the time the state court renders its decision." Id.

22       Finally, this Court must consider whether the state court's decision was "contrary to, or

23  involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,

24  *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the

25  writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

26  question of law or if the state court decides a case differently than [the] Court has on a set of

27  materially indistinguishable facts."  Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.

28  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state

1  court identifies the correct governing legal principle from [the] Court's decisions but unreasonably

2  applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413.

3       "[A] federal court may not issue the writ simply because the court concludes in its

4  independent judgment that the relevant state court decision applied clearly established federal law

5  erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id</u>. at 411. A

6  federal habeas court making the "unreasonable application" inquiry should ask whether the state

7  court's application of clearly established federal law was "objectively unreasonable." <u>Id</u>. at 409.

8       Petitioner has the burden of establishing that the decision of the state court is contrary to or

9  involved an unreasonable application of United States Supreme Court precedent. <u>Baylor v. Estelle</u>,

10  94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states,

11  Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

12  decision is objectively unreasonable. <u>See</u> <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600-01 (9th

13  Cir.1999).

14       AEDPA requires that we give considerable deference to state court decisions. The state

15  court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's

16  interpretation of its own laws. <u>Souch v. Schaivo</u>, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537

17  U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

18  **III.  Review of Petition**

19       **A.  Ground One**

20       In his first claim for relief, Petitioner alleges the erroneous joinder of charges deprived him of

21  his due process rights and resulted in a fundamentally unfair trial.

22       This claim was first presented on direct appeal to the Fifth DCA. The Fifth DCA denied the

23  claim in a reasoned opinion. (LD 6.) Petitioner then presented the claim in a petition for review to

24  the California Supreme Court, where it was summarily denied. (LD 7,8.) The California Supreme

25  Court, by its "silent order," is presumed to have denied the claims presented for the same reasons

26  stated in the opinion of the lower court. <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991).

27       The Fifth DCA analyzed the claim as follows:

28

*Severance*

Defendant acknowledges the crimes charged were properly charged together under section 954 (different offenses of the same class of crimes or offenses). He contends, however, that the "unique circumstances of this case" created a prejudicial joinder; he says the trial court abused its discretion in denying his motion to sever count 4 from the remaining counts. To succeed with this claim, defendant must "clearly establish that there [was] a substantial danger of prejudice requiring that the charges be separately tried." [Citation.]

If evidence of each of the joined crimes would have been admissible in separate trials of each crime, joinder of the charges is not prejudicial in the usual case. [Citation.] In the present case, the court ruled the crimes were cross-admissible pursuant to Evidence Code section 1108. That section provides, in relevant part: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] section 352."

In making its ruling, the court noted that Evidence Code section 1108 "is contrary to much of the portions of the Evidence Code with *respective* admissibility . . . . [¶] But because of the nature of these particular crimes, our legislature has felt it was appropriate to allow this more - - it would be intrusive evidence - - than would normally be *allotted*." (Italics added.[4]) After stating some reflections on the reason for adoption of Evidence Code section 1108, the court concluded: "[T]he Court does see there would be cross-admissibility here; therefore, the issue of undue prejudice - - substantial likelihood of undue prejudice, the Court feels, is overcome by that cross-admissibility. [¶] . . . [W]ith respect to [Evidence Code section] 1108, based on what has been presented to the Court, the Court does not find *an unsubstantial likelihood* of undue prejudice if the information were admitted under [Evidence Code section] 1108, based on the factual situation that has been presented to the Court." (Italics added.)

Defendant seizes on the phrase "does not find an unsubstantial likelihood of undue prejudice" to argue that the court - - through the use of a double negative - - intended to state that it *did find* a substantial likelihood of undue prejudice. Having so found, defendant reasons, the court abused its discretion by relying on cross-admissibility to deny the severance motion, since unduly prejudicial evidence is not cross-admissible under Evidence Code sections 1108 and 352.

The most direct answer to defendant's contention is that the court probably did not say the words "an unsubstantial likelihood." Rather, based on the repeated, and rather obvious, mistranscriptions contained in the reporter's transcript, it appears far more likely the court said "any substantial likelihood": "based on what has been presented to the Court, the Court does not find any substantial likelihood of undue prejudice if the information were admitted under . . . ." It is unlikely an experienced trial judge and the parties' attorneys would have failed immediately to recognize that the court had made contradictory assertions in denying defendant's motion (i.e., that the evidence was cross-admissible but would be substantially prejudicial if cross-admitted). Yet no one is reported to have commented on the matter in any way.

In his reply brief, defendant casts additional focus on the first part of the trial court's ruling on the severance motion. There, the court said: "[T]he Court does see there would be cross-admissibility here; therefore, the issue of undue prejudice – substantial likelihood of

---

[4][The appellate court] believe the italicized words are transcription errors. For *respective*, [the Fifth DCA] read[s] "respect to." For *allotted*, [the court] read[s] "admitted."

undue prejudice, the Court feels, is overcome by that cross-admissibility." Defendant points out that this statement is error if, by it, the court meant that evidence that was unduly prejudicial under Evidence Code section 352 is still cross-admissible under Evidence Code section 1108.

Such a ruling would conflict with the express words of Evidence Code section 1108, which permits the evidence to be admitted if it is not otherwise "admissible pursuant to [Evidence Code] section 352." (Evid. Code, § 1108.)

And attributing that meaning to the court's statement would ignore both the nature of defense counsel's argument for severance and the immediately preceding discussion by the court. Defense counsel did not argue that the evidence as to either victim was unduly prejudicial; to the contrary, his argument was that the evidence as to each victim was so weak that it would not result in conviction if the cases were tried separately. He claimed the undue prejudice arose only from the fact that two persons accused defendant of sexual offenses. The court addressed this point by noting, correctly, that the type of evidence now admissible under Evidence Code section 1108 was usually inadmissible (as unduly prejudicial in the exact manner suggested by defense counsel) prior to the enactment of that section. Thus, the court's comment merely acknowledged that the evidence in question may not have been admissible before enactment of Evidence Code section 1108, but that it was admissible now, if the only claimed prejudice was from the bolstering effect of the multiple accusers.

We conclude the court adequately and correctly addressed the motion for severance in the terms it had been presented by the defendant. [Citation.]

### Beyond Bolstering

For the first time, on this appeal, defendant argues that the evidence as to each victim was not relevant as to the other victim. He says that this is because in the case of R.B., the only issue for which evidence of other crimes was admissible was to show "a disposition for committing rape." The evidence of other crimes would be admissible as to B.K., he argues, only to the extent it showed defendant's "disposition to grope, fondle, 'grind' on, and to forcibly orally copulate females."

This objection was waived when it was not raised below. [Citation.]

Further, the argument entirely ignores the purpose of Evidence Code section 1108. That section was intended, in the case of sex crimes, to sweep away the narrow categories of admissibility of other-crimes evidence that had existed under Evidence Code section 1101. [Citation.] Instead, such evidence is cross-admissible (unless unduly prejudicial in its own right) whenever it may be helpful to the jury, on a commonsense basis, for resolution of any issue in the case, including the probability or improbability that the defendant has been falsely accused. [Citation.]

In the present case, the evidence that defendant committed sex crimes against two of his minor female relatives was relevant to show he had not been falsely accused by either victim, even if the sexual assault on each victim was somewhat different. [Citation.]

### Prejudice

Apparently recognizing that he could not have been prejudiced by the introduction of evidence that the jury did not believe, defendant argues that prejudice must be measured solely as of the time of the severance motion. He argues: "There was a foreseeable spillover effect by aggregating the evidence from each case to the other. Given the circumstances, prejudice was not probable from not severing the cases."

Probable or not, prejudice did not materialize. Defendant was acquitted of all charges related to B.K. except for the misdemeanor assault he, in essence, admitted. In these circumstances, reversal would not be warranted even if the court erred in denying the severance motion. [Citation.]

(LD 6 at pp. 3-7.)

In United States v. Lane, 474 U.S. 438, 446 n.8 (1986), the Supreme Court stated: "Improper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." The Court held "that an error involving misjoinder 'affects substantial rights' and requires reversal only if the misjoinder results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.'" Id. at 449, citing Kotteakos v. United States, 328 U.S. 750, 776 (1946).

It is clear Petitioner's claim is without merit. As thoroughly discussed by the appellate court, Petitioner suffered no prejudice from joinder of the charges. The jury did not believe the evidence and acquitted him of all charges related to B.K. Accordingly, the state court adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, or result in a decision that was based on an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d). The claim should be rejected.

**B.  Ground Two**

Petitioner next claims that even if joinder were proper, his trial was fundamentally unfair thereby depriving him of due process of law.

This claim was also raised on direct appeal to the Fifth DCA and denied in a reasoned opinion. It was then raised to the California Supreme Court in a petition for review where it was summarily denied. The California Supreme Court is presumed to have denied the claim for the same reasons stated by the Fifth DCA. Ylst, 501 U.S. at 803.

The Fifth DCA denied the claim as follows:

Defendant contends that even if joinder was proper, the trial itself was grossly unfair "so as to deprive appellant of a fair trial or due process of the law," [citation]. This claim is patently meritless, for reasons discussed in the foregoing section, namely, that defendant was not prejudiced by the introduction of evidence the jury did not believe.

(LD 6 at p. 7.)

1    The Supreme Court addressed the prejudicial effect of joinder in <u>Spencer v. Texas</u>, 385 U.S.

2  554, 562 (1967):

3         [A]ll joint trials, whether of several codefendants or of one defendant charged with multiple
          offenses, furnish inherent opportunities for unfairness when evidence submitted as to one
4         crime (on which there may be an acquittal) may influence the jury as to a totally different
          charge. <u>See Delli Paoli v. United States</u>, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278; <u>cf.</u>
5         <u>Opper v. United States</u>, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101; <u>Krulewitch v. United States</u>,
          336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790. This type of prejudicial effect is acknowledged to
6         inhere in criminal practice, but it is justified on the grounds that (1) the jury is expected to
          follow instructions in limiting this evidence to its proper function, and (2) the convenience of
7         trying different crimes against the same person, and connected crimes against different
          defendants, in the same trial is a valid governmental interest.
8
         In this case, as fully discussed by the appellate court, there was no prejudice resulting from
9
   the joinder of charges since the jury acquitted Petitioner of all charges related to one of the
10
   complainants (except for the misdemeanor assault charge which Petitioner essentially admitted).
11
   Therefore, Petitioner was not prejudiced, and even if there was an opportunity for prejudice, it was
12
   justified. The state court rejection of this claim was not objectively unreasonable.
13
14        **C.  Ground Three**

15        In his last claim for relief, Petitioner alleges the trial court violated his constitutional rights

16 when it increased his sentence by imposing an upper term because it relied on facts found by the

17 judge, not the jury.

18        This claim was also presented on direct appeal to the Fifth DCA and rejected in a reasoned

19 opinion. (LD 6 at pp. 7-10.) It was then presented to the California Supreme Court where it was

20 denied. (LD 7,8.) The California Supreme Court is presumed to have denied the claim for the same

21 reasons stated by the Fifth DCA. <u>Ylst</u>, 501 U.S. at 803.

22        In rejecting this claim, the Fifth DCA stated:

23             [Petitioner] contends the trial court erred in basing [his] upper term sentence on facts
          not admitted or found by the jury. (See *Blakely v. Washington* (2004) 524 U.S. ___ [124 S.Ct.
24        2351]; *Apprendi v. New Jersey* (2000) 530 U.S. 466.) [Petitioner] contends not only that all
          sentencing factors must be found by the jury but, in addition, that the jury must determine
25        whether aggravating factors outweigh mitigating factors.

26             The holdings of *Blakely* and *Apprendi* do not apply when the exercise of judicial
          discretion is kept within a sentencing range authorized by statute for the specific crime of
27        which the defendant is convicted by jury. (*United States v. Booker* (2005) 543 U.S. __, __
          [125 S.Ct. 738, 750] (maj. opn. of Stevens, J.); *id.* at p. __ [125 S.Ct. at p. 775] (dis. opn. of
          Stevens, J.).)
28

Based on constitutional history, *Apprendi* advises, "We should be clear that nothing in this history suggest that it is impermissible for judges to exercise discretion - - taking into consideration various factors relating both to offense and offender - - in imposing judgment *within the range* prescribed by statute." (*Apprendi v. New Jersey, supra,* 530 U.S. at p. 481.) *Apprendi* instructs further that a "sentencing factor" is distinguishable from a "sentence enhancement": the former is a "circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence *within the range* authorized by the jury's finding that the defendant is guilty of a particular offense"; the latter is "used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." (*Id.* at p. 494, fn. 19.)

In *Blakely,* while the sentence was within the indeterminate maximum for the category of the offense (class B felony), the sentenced term exceeded the specific range set by Washington state statute for the offense; the sentence imposed by the trial court was based on facts not found by the jury and thus constitutionally excessive. (*Blakely v. Washington, supra,* 542 U.S. at pp. __ [124 S.Ct. at pp. 2537-2538].)

Under California's determinate sentencing law, the court must exercise its discretion to select a term within the particular range (lower, middle, or upper) allowed for a specific offense. The court's discretion is informed by its evaluation of factors in mitigation and aggravation. These sentencing factors, consistent with the definition found in *Apprendi,* are weighed by the sentencing judge in determining the term of imprisonment within the specific offense's sentencing range. If there are no such factors or neither the aggravating nor mitigating factors preponderate, the court shall choose the middle term; additionally, the court retains the discretion to impose either the upper or middle term where it finds the upper term is justifiable. (*People v. Thornton* (1985) 167 Cal.App.3d 72, 77.) Such an exercise of discretion does not violate the constitutional principles set forth in *Apprendi* and followed in *Blakely* because the court's discretion is exercised within the specific statutory range of sentence. (See *United States v. Booker, supra,* 543 U.S. at p. __ [125 S.Ct. at p. 750] (maj. opn. of Stevens, J.); *id.* at 543 U.S. at p. __ [125 S.Ct. at p.775] (dis. opn. of Stevens, J.).)

Here, the trial court selected the upper term based upon its analysis of sentencing factors in mitigation and aggravation. This choice of term was within the statutory range allowed for the specific crime of which defendant had been convicted. No constitutional violation occurred.

Even if *Blakely* were to apply to California's Determinate Sentencing Act, we find that the trial court's imposition of the upper term does not require reversal. The main focus of the trial court's statement of reasons for the imposition of the upper term was on defendant's criminal history. As *Apprendi* states, and *Blakely* agrees, prior recidivist conduct may be used by a sentencing judge, even absent a jury finding, to increase a defendant's term. (*Apprendi v. New Jersey, supra,* 530 U.S. at p.488.) Here, the trial court found three aggravating circumstances - - two of those concerned recidivism: his long and increasingly serious history of crime primarily related to violence, and his poor performance on grants of probation and parole in numerous cases. The only aggravating factor based on defendant's present conduct was the finding of a violation of a position of trust. The only factor found in mitigation was a single occasion when he performed well on parole. We are convinced that even if we were required to strike the "trust" finding, his long and increasing criminal history and multiple instances of poor probation and parole performance would outweigh his single instance of performing well on parole.

(LD 6 at pp. 7-10.)

Last year, the Supreme Court decided <u>Cunningham v. California</u>, 549 U.S. 270, 127 S.Ct.

1    856 (2007), holding that California's determinate sentencing law ("DSL") violates a defendant's

2    right to jury trial under the Sixth and Fourteenth Amendments by placing sentencing-elevating

3    factfinding within the judge's province. Id. at 857. Therefore, the Fifth DCA's determination in this

4    case that California's DSL does not violate due process because the court's discretion is exercised

5    within the specific statutory range of the sentence runs contrary to Cunningham.

6           Nevertheless, in this case Petitioner's claim should be rejected because the trial court did not

7    impose the upper term based solely on its own fact-finding. In imposing the upper term, the court

8    relied on the following factors: 1) Petitioner's long history of crime involving violence; 2)

9    Petitioner's poor performance while on probation or parole; and 3) Petitioner's violation of a

10   position of trust. The third factor violates the Sixth Amendment because it is a fact in aggravation

11   not found by the jury. However, the first two factors do not violate the Sixth Amendment, because a

12   defendant does not have a constitutional right to jury trial for a sentence increase based on the fact of

13   his prior conviction. Cunningham, 549 U.S. at ___, 127 S.Ct. at 868; Blakely v. Washington, 542

14   U.S. 296, 301 (2004); Apprendi v. New Jersey, 530 U.S. 466, 488, 490 (2000); Almandarez-Torres

15   v. United States, 523 U.S. 224, 246 (1998). Furthermore, under the DSL, "the presence of one

16   aggravating factor renders it lawful for the trial court to impose an upper term sentence." People v.

17   Black, 41 Cal.4th 799, 815 (2007). Therefore, for purposes of the Sixth Amendment, the statutory

18   maximum in this case was the upper term, not the middle term. Thus, because the first two

19   aggravating circumstances independently satisfy Sixth Amendment requirements, Petitioner was not

20   legally entitled to the middle term and the imposition of the upper term did not violate his Sixth

21   Amendment right to jury trial. See People v. Black, 41 Cal.4th 799, 820 (2007).

22                                            **RECOMMENDATION**

23          Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be

24   DENIED. It is FURTHER RECOMMENDED that the Clerk of Court be DIRECTED to enter

25   judgment for Respondent.

26          This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill,

27   United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule

28   72-304 of the Local Rules of Practice for the United States District Court, Eastern District of

1  California.  Within thirty (30) days (plus three days if served by mail) after being served with a copy,

2  any party may file written objections with the court and serve a copy on all parties.  Such a document

3  should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to

4  the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail)

5  after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to

6  28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified

7  time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th

8  Cir. 1991).

9  IT IS SO ORDERED.

10  **Dated:    July 21, 2008**              /s/ Sandra M. Snyder
                                        UNITED STATES MAGISTRATE JUDGE